```
 1
 2
 3
 4
 5
 6
 7
 8                      UNITED STATES DISTRICT COURT
 9                     EASTERN DISTRICT OF CALIFORNIA
10
                              ----oo0oo----
11
12  ANISHA WASHINGTON,
                                          2:10-cv-0186 FCD KJM
13            Plaintiff,
14       v.                               MEMORANDUM AND ORDER
15  CALIFORNIA DEPARTMENT OF
    EDUCATION, CALIFORNIA DEPARTMENT
16  OF MENTAL HEALTH, CALIFORNIA
    DEPARTMENT OF SOCIAL SERVICES,
17  COMMUNITY CARE LICENSING
    DIVISION, JACK O'CONNELL,
18  Individually and as the
    Superintendent of the California
19  Department of Education, STEPHEN
    W. MAYBERG, Individually and as
20  the Director of the California
    Department of Mental Health,
21  JOHN A. WAGNER, Individually and
    as the Director of the
22  California Department of Social
    Services,
23
              Defendants.
24  _____/
25                            ----oo0oo----
26       This matter is before the court on defendants California
27  Department of Education ("CDE"), California Department of Mental
28  Health ("CDMH"), California Department of Social Services
```

("CDSS"), Jack O'Connell ("O'Connell"), Stephen W. Mayberg ("Mayberg"), and Jack Wagner's ("Wagner") (collectively, "defendants") motions to dismiss plaintiff Anisha Washington's ("plaintiff" or "Washington") First Amended Complaint.  Plaintiff opposes the motion.  For the reasons set forth below,[1] defendants' motions to dismiss are GRANTED.

## BACKGROUND

Plaintiff Anisha Washington was born on June 18, 1991, and is eighteen years old.  (First Am. Compl., filed June 29, 2010, ¶¶ 7, 24.)  She is eligible for special education services under the Individuals with Disabilities Education Act (the "IDEA") because she is emotionally disturbed.  (Id. ¶ 7.)  She is currently homeless, but stays in the homes of various family members in and around Sacramento, California.  (Id.)

At the approximate age of eight years old, plaintiff was removed from her home by Sacramento County officials due to abuse and neglect by her biological mother.  (Id. ¶ 26.)  She was made a dependent of the Sacramento County Juvenile Court.  (Id.) Except for a few months in which she briefly returned to her mother's home, plaintiff was placed in foster care, group homes, a State hospital, out-of-state residential treatment, and juvenile halls.  (Id. ¶ 27.)  On September 16, 2003, plaintiff was identified as eligible for special education services as emotionally disturbed and has remained eligible since that date. (Id. ¶ 28.)

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. L.R. 230(g).

2

On or about August 13, 2006, plaintiff was made a ward of the juvenile court after two misdemeanor violations of battery and vandalism that occurred while in a group home placement. (Id. ¶ 29.)  A few months later, on or about November 21, 2006, plaintiff was placed at Metropolitan State Hospital because of her severe suicidal and assaultive behaviors.  (Id. ¶ 30.)  After she reportedly assaulted a staff member in an attempt to leave Metropolitan State Hospital, she was sent to Los Angeles County Juvenile Hall on March 8, 2007.  (Id. ¶ 31.)  On or about September 14, 2007, plaintiff was transported back to Sacramento and placed in Sacramento County Juvenile Hall.  (Id.)  She began receiving education services from the Sacramento County Office of Education ("SCOE").  (Id.)

In approximately December 2007, plaintiff was placed by the Sacramento Probation Department in a group home for delinquent minors.  (Id. ¶ 32.)  In this group home plaintiff attempted suicide on at least two occasions and was hospitalized each time. (Id.)  Following the hospitalization plaintiff was returned to Sacramento Juvenile Hall because the group home placement identified by the Probation Department did not have sufficient services to address her mental health needs.  (Id. ¶ 33.)

On January 22, 2008, SCOE convened an Individualized Education Program ("IEP") meeting for plaintiff.  (Id. ¶ 34.) The IEP team agreed to submit a referral to Sacramento County Mental Health ("SCMH") for an assessment to determine her eligibility for special education mental health services from the County.  (Id.)

3

At an IEP meeting on March 4, 2008, plaintiff was found eligible for Chapter 26.5 services.[2] (Id. ¶ 36.) SCMH and the Grant High School District ("GHSD") agreed that plaintiff required a residential placement pursuant to her IEP. (Id.)[3] Although plaintiff was still in juvenile hall, GHSD accepted educational responsibility for plaintiff's placement because plaintiff's mother resided within the district and still retained educational rights. (Id.) On March 27, 2008, plaintiff was placed by the SCMH and GHSD at Devereux Florida, a residential treatment facility in Viera, Florida. (Id. ¶ 37.)

On December 18, 2008, the Sacramento County Superior Court, Juvenile Division, determined that reunification services for plaintiff and her mother, Felicia Washington, would be terminated. (Id. ¶ 38.) The court revoked Felicia Washington's authority to make education decisions on plaintiff's behalf. (Id.) Pat Lapin ("Lapin"), plaintiff's maternal great-grandmother, was appointed as plaintiff's educational representative. (Id.) Lapin resides in Concord, California within the Mount Diablo Unified School District ("MDUSD"). (Id. ¶ 39.)

In the 2008-2009 school year, plaintiff remained at Devereux Florida pursuant to her IEP. (Id. ¶ 40.) Plaintiff was, and

---

[2] IEP mental health services provided by the student's county of residence are commonly referred to as "Chapter 26.5 services" based on the California Government Code sections that authorize these services. Chapter 26.5 services may include, but are not limited to, individual therapy, group therapy, family therapy, medication management, and residential placement.

[3] GHSD has since become a part of the Twin Rivers Unified School District.

4

continues to be, significantly credit deficient and will not graduate from high school by her nineteenth birthday. (Id. ¶ 43.)

Devereaux Florida's licensing restrictions prohibited it from maintaining plaintiff in residential placement past her eighteenth birthday. (Id. ¶ 41.)  Accordingly, new living arrangements needed to be made as plaintiff approached her eighteenth birthday. (Id.)  Plaintiff asserted that she wanted to return to California. (Id. ¶ 42.)

On April 23, 2009 the Twin Rivers Unified School District ("TRUSD") stated in a letter that it would not take responsibility for plaintiff's program once she became an adult because her educational representative resided in Concord, California and her biological mother had moved to a new address within Sacramento City Unified School District ("SCUSD"). (Id. ¶ 44.)

TRUSD convened an IEP meeting on May 7, 2009. (Id. ¶¶ 44-45.)  A MDUSD and SCMH representative attended the meeting. (Id. ¶ 45.) SCUSD did not send a representative. (Id.)  At the meeting, it was determined that plaintiff would continue to need a residential placement on her eighteenth birthday. (Id.)  Lapin asked the agencies to place plaintiff in California. (Id.)  The present school districts, TRUSD and MDUSD, asserted they had no legal responsibility for plaintiff's IEP. (Id.)  SCMH asserted that California regulatory restrictions prohibited residential placement in California and that it could not provide plaintiff with 26.5 services without an educational agency participating in the IEP. (Id.)

5

On May 21, 2009, Lapin, on plaintiff's behalf, filed a special education due process complaint with the Office of Administrative Hearings ("OAH") against the following agencies: SCUSD, MDUSD, TRUSD, SCMH, CDE, CDMH, and Sacramento County Probation Department.[4] (Defendant's Request for Judicial Notice [Docket #18], filed August,10 2010 ["RJN"], Ex. 1.)  In the complaint, Lapin sought (1) declaratory relief that plaintiff was denied a free, appropriate public education, (2) identification of the responsible agencies for plaintiff's services, (3) an order directing the responsible agency to place plaintiff in an appropriate residential facility that would meet her needs, (4) an order allowing plaintiff to participate in the placement and transition process, and (5) an order directing the responsible agencies to develop an appropriate residential treatment facility in California. (Id. at Ex. 1.)

Sacramento County Probation Department, CDE, SCUSD, and MDUSD filed motions to be dismissed as parties. (Id. ¶ 51.) Lapin opposed the motions. (Id.)  OAH granted Sacramento County Probation Department, SCUSD, and CDE's motions and dismissed each as parties. (RJN at Ex. 2 and Ex. 3.)

On June 12, 2009, TRUSD convened an IEP meeting for plaintiff which included representatives from SCMH. (First Am. Compl. ¶ 47.)  During the meeting TRUSD and SCMH offered to place plaintiff at Devereux Colorado Cleo Wallace ("Devereux

---

[4] Lapin previously filed a due process complaint on April 29, 2009. (RJN at Ex. 5.) That complaint contained four issues. (Id.)  OAH determined all but the fourth issue were sufficiently plead and granted leave to amend. (Id. at Ex. 6.) Plaintiff then filed a subsequent complaint on May 21, 2009.

6

Colorado"), a residential treatment facility in Denver, Colorado. (Id.)[5]  Lapin accepted this placement on plaintiff's behalf. (Id. ¶ 48.)  On June 17, 2009, plaintiff transferred from Devereux Florida to Devereux Colorado.  (Id. ¶ 49.)

In July and August 2009, TRUSD, MDUSD, SCMH and Lapin entered into a settlement agreement which clarified agency responsibility for plaintiff's program.  (Id. ¶ 54.)  Following the settlement agreement, the only remaining respondent to Lapin's due process complaint was CDMH.  (Id. ¶ 55.)  The case proceeded to hearing on August 26 and 28, 2009.  (Id.)

Plaintiff accepted the Colorado placement, but claims that she continued to assert her desire to return to California to be closer to her family members.  (Id. ¶ 50.)  Plaintiff asserts that this is what caused her to be resistant to mental health treatment and the educational services at Devereux Colorado. (Id.)

On or about September 18, 2009, plaintiff discharged herself from Devereux Colorado and returned to Sacramento County.  (Id. ¶ 56.)  Since that time, plaintiff has been staying with various relatives within the Elk Grove Unified School District ("EGUSD"). (Id.)  EGUSD has accepted responsibility for her special education services and provided her with placements in to different nonpublic schools.  (Id. ¶ 57.)  SCMH continues to accept responsibility for plaintiff's Chapter 26.5 services. (Id.)

---

[5] Devereux Colorado is licensed to provide education, residential, and mental health services for students up to age twenty-two.  (First Am. Compl. ¶ 47.)

7

1    On October 26, 2009, OAH determined that CDMH has no
2 responsibility for plaintiff's program. (RJN at Ex. 3.) Because
3 of this, OAH did not rule on whether CDMH had a responsibility to
4 ensure that plaintiff receive a residential placement in
5 California. (Id.)

6    Since returning to California, plaintiff has been placed in
7 psychiatric hospitals on multiple occasions causing her to be
8 absent from her second nonpublic school placement several times.
9 (Id. ¶ 60.)  SCMH and EGUSD are unable to place plaintiff in a
10 residential program in California because no such placement
11 exists that is authorized to accept her. (Id. ¶ 61.)

12    On June 29, 2010, plaintiff filed her First Amended
13 Complaint alleging denial of a free, appropriate public education
14 under the IDEA and the California Education Code, section 56000,
15 *et seq.*, as well as discrimination against plaintiff and others
16 similarly situated in violation of the Rehabilitation Act, 29
17 United States Code, section 794, *et seq*. (Id. ¶¶ 62-79.)
18 Plaintiff asserts that "this case challenges California's failure
19 to make available in-state residential treatment services to
20 [p]laintiff, an emotionally disturbed student, who is over the
21 age of eighteen years old, has not graduated from high school,
22 and will not graduate by the age of nineteen." (Compl. ¶ 11.)
23 Further, she alleges that defendant's "policies, practices, and
24 regulations . . . prohibit[] such residential treatment
25 services." (Id. ¶ 12.)

## STANDARD

27    Under Federal Rule of Civil Procedure 8(a), a pleading must
28 contain "a short and plain statement of the claim showing that

8

the pleader is entitled to relief." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)).  Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed.  Id. at 1952.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  Id. at 1949.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

10

**ANALYSIS**

Defendants move to dismiss plaintiff's claims on the basis that she has failed to exhaust her administrative remedies and that she has no excuse for her failure to do so. Specifically, defendants assert that plaintiff has failed to file an administrative due process complaint before initiating this lawsuit.

With respect to claims arising from the IDEA and the Rehabilitation Act, challenges based on failure to exhaust are deemed to be jurisdictional in nature. Blanchard v. Morton Sch. Dist., 420 F.3d 918, 920-21 (9th Cir. 2005). To establish jurisdiction in a case brought pursuant to the IDEA, a plaintiff must show that he or she has exhausted all available administrative remedies prior to commencing her action in federal district court. 20 U.S.C. § 1415. If plaintiff fails to exhaust his or her remedies, the federal courts do not have jurisdiction to hear plaintiff's claim and the claim must be dismissed. Id. (citing Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1274 (9th Cir. 1999)).

**1.   Exhaustion**

Plaintiff contends that she has exhausted her administrative remedies because she previously brought a state-level administrative complaint. In determining whether administrative remedies must be pursued as a prerequisite to judicial intervention, the focus must be on the source and nature of the alleged injuries for which remedy is sought, and not in the specific remedies sought in any given case. Robb v. Bethel Sch. Dist., 308 F.3d 1047, 1050 (9th Cir. 2002). Such a requirement

11

"ensures that federal courts, generalists with no experience in the education needs of disabled students, are given the benefit of expert fact-finding by a state agency devoted to this very purpose." Id. at 1051 (citing Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1991) (internal quotations omitted)).  Consequently, if injuries alleged by a plaintiff can be "redressed to any degree" by the IDEA's administrative procedures and remedies or if the IDEA's ability to remedy an injury is unclear, exhaustion is required.  Kutasi v. Las Virgenes Unified School Dist., 494 F.3d 1162, 1168 (9th Cir. 2007) (quoting Robb v. Bethel Sch. Dist., 308 F.3d 1047, 1053-54 (9th Cir. 2002).

Settlement agreements do not equate to exhaustion of administrative remedies because a full exploration of the issues has not been completed.  Hayden v. Western Placer Sch. Dist., No. 2:08-cv-03089-MCE-EFB, 2009 WL 1325945, at *4 (E.D. Cal. May 12, 2009).  This reasoning is in accord with policy objectives underlying administrative exhaustion.  As the Ninth Circuit explained in Hoeft:

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

967 F.2d at 1303.

Here, plaintiff contends that the filing of her previous state-level administrative complaint, which raised the identical issues set forth in this federal complaint against different

12

defendants, equates to exhaustion of her administrative remedies. Although the same issues were alleged in each complaint, in the prior administrative action OAH did not adjudicate the merits of plaintiff's claim because a settlement agreement was reached instead. As such, a necessary exploration of the issues was never accomplished.

Notwithstanding, plaintiff abandoned this settlement agreement and now seeks new relief. This new relief implicates provisions of the IDEA that should first be adjudicated at an agency level. For example, whether plaintiff is entitled to a residential program in California and, if so, which parties are responsible for affording her this relief, are "classic examples of the kind of technical questions of educational policy that should initially be resolved with the benefit of agency expertise and a fully developed administrative record." Hoeft, 967 F.2d at 1305. Adjudicating the validity of defendants' policies requires a fact specific inquiry properly subject to administrative adjudication. As such, plaintiff's administrative remedies have not been exhausted.

**2.   Exceptions to Exhaustion**

In the alternative, plaintiff argues that her claims should be exempt from exhaustion because it would be futile to use the administrative procedures as the agencies have adopted a policy or pursued a practice that is contrary to the law and it is improbable that adequate relief can be obtained. Hoeft, 967 F.2d at 1308.

The plaintiff bears the burden of proof to show that his or her alleged injuries could not be "redressed to any degree"

13

through the administrative process.  Robb, 308 F.3d at 1050. Exception to exhaustion requires a showing that no useful purpose would be served by filing an administrative complaint.  Hayden v. Western Placer Sch. Dist., 2009 WL 1325945, at *6 (citing Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir.1997)).

Plaintiff does not make a sufficient showing that exhaustion would be futile.  As stated above, plaintiff abandoned her settlement agreement and now seeks new relief.  This new relief requires adjudication, *inter alia*, of whether plaintiff is entitled to a residential program in California and, if so, which parties are responsible for affording her this relief.[6]  These issues may be addressed, at least to some degree, through the administrative process.  At minimum, the administrative process will likely determine whether plaintiff is even entitled to the educational placement that is at the core of her complaint. Accordingly, it is not futile for plaintiff to file a new complaint against the appropriate agencies and request that OAH fully adjudicate her claims.[7]

---

[6] For example, plaintiff is now living in Elk Grove and EGUSD has accepted responsibility for her special education services, yet EGUSD was not a party to her previous administrative complaint.  Further, plaintiff included the California Department of Social Services as a defendant in the current action, but did not include it as a defendant in her prior administrative complaint.

[7] Further, plaintiff's other exemption arguments fail. Plaintiff's assertion that defendants polices and procedures are contrary to law is unpersuasive.  Exception on this ground requires that a party show (1) the question involved is purely legal and (2) that federal court intervention is necessary because the state will be unable to resolve the problem through its own system.  Hoeft, 967 F.2d at 1304-05.  Whether plaintiff is entitled to relief is a question that requires factual inquiry
(continued...)

14

**CONCLUSION**

Therefore, for the foregoing reasons, defendants' motion to dismiss is GRANTED.

IT IS SO ORDERED.

DATED: October 19, 2010

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

⁷(...continued)
appropriately answered through the administrative process in the first instance.

Additionally, exhaustion may be excused where the plaintiff shows the administrative process itself has broken down. <u>Hoeft</u>, 967 F.2d at 1308-1309. In contrast, here, plaintiff's claims do not rise to a systemic breakdown - she received relief and subsequently abandoned it. As such, exhaustion cannot be excused for this reason.

15